IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VINCENT TOD BEAZIE, Individually and as Trustee of the Vincent T. Beazie Revocable Living Trust Dated April 17, 2001,<br><br>           Plaintiff,<br><br>   vs.<br><br>AMERIFUND FINANCIAL, INC. dba ALL FUND MORTGAGE, a Washington corporation registered previously as a foreign corporation doing unlicensed business in the State of Hawaii, its successors and assigns; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation; DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for American Mortgage-Back Pass-Through Certificates, Series 2007-5, a New York corporation; and DOES 1-30,<br><br>           Defendants.<br>_____ | CIVIL NO. 09-00562 JMS/KSC<br><br>ORDER GRANTING DEFENDANTS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR AMERICAN MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-5'S MOTION FOR SUMMARY JUDGMENT |

**<u>ORDER GRANTING DEFENDANTS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR AMERICAN MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-5'S MOTION FOR SUMMARY JUDGMENT</u>**

# I.  **INTRODUCTION**

On July 22, 2009, Plaintiff Vincent Tod Beazie, Individually and as Trustee of the Vincent T. Beazie Revocable Living Trust Dated April 17, 2001 ("Plaintiff") filed this action in the First Circuit Court of the State of Hawaii. Plaintiff's First Amended Complaint ("FAC") asserts claims against Defendants Amerifund Financial Inc. dba All Fund Mortgage ("Amerifund"), Mortgage Electronic Registration Systems ("MERS"), and Deutsche Bank National Trust Company as Trustee for American Mortgage-backed Pass-through Certificates, Series 2007-5 ("DBNTC") for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*., the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601, *et seq*., and various state law claims stemming from a mortgage transaction concerning real property located at 91-423 Pupu Street, Ewa Beach, Hawaii 96706 (the "subject property").  The action was subsequently removed to this court.

Currently before the court is MERS and DBNTC's (collectively, "Moving Defendants") Motion for Summary Judgment in which they argue that there is no genuine issue of material fact supporting any of Plaintiff's claims against them.  Based on the following, the court GRANTS Moving Defendants' Motion for Summary Judgment.

## II.  **BACKGROUND**

**A.     Factual Background**

On March 26, 2007, Plaintiff refinanced his existing loan on the subject property by executing an adjustable rate note in the amount of $1,260,000 in favor of Amerifund, which was secured by a mortgage on the subject property. Defs.' Exs. 1, 3.  The mortgage explains that MERS is the mortgagee, and is "acting solely as nominee" for Amerifund.  Defs.' Ex. 3 at 1-2.

In consummating this loan, Plaintiff signed a Uniform Residential Loan Application (the "Application"), which states that Plaintiff was applying for a 480-month adjustable rate mortgage in the amount of $1,260,000.  Defs.' Ex. 2 at 56; Defs.' Ex. 4 at 1.  The Application states that Plaintiff acknowledges that "the information provided in this application is true and correct as of the date set forth opposite my signature," and Plaintiff admits that he signed this acknowledgment. Defs.' Ex. 2 at 58-59; Defs.' Ex. 4 at 3.  The Application nonetheless included false information, including that Plaintiff's gross monthly income was $18,000 when in fact it was much less.  Pl.'s Decl. ¶ 6.

In addition to the Application, Plaintiff signed the note, mortgage, Adjustable Rate Mortgage Loan Disclosure Statement, TILA Disclosure Statement, and Notice of Right to Cancel.  *See* Defs.' Concise Statement of Facts ("CSF") ¶

7.[1]  Although Plaintiff acknowledged that his signature indicates that he received these documents, Defs.' Ex. 2 at 78-81, Plaintiff disputes that he received two completed and accurate copies of the Notice of the Right to Cancel.  Plaintiff further conceded that he understood that the interest rate on the loan would change, but believed that his payment would not exceed more than $100 of his initial monthly payment.  Defs.' Ex. 2 at 60-61.  Plaintiff understood, however, that he would be responsible for any default on the loan.  *Id.* at 61.

According to Plaintiff, he was aware there was another appointment after him such that he had only a half hour to complete the documents, but nobody told him that he had only a specific amount of time to review and sign the documents or that he needed to hurry.  *Id.* at 57, 62.  Plaintiff asserts that although his signature states that he read and understood the documents, he did not read each document because he relied "on the professionality [sic] of the qualified person" to sign the documents and that it is "common practice" to sign without reading them.  Defs.' Ex. 2 at 59, 66, 70.

In November 2008, Plaintiff started defaulting on the loan.  *Id.* at 60.  On June 1, 2009, an "Assignment of Mortgage" was recorded in the Hawaii State Bureau of Conveyances, asserting that MERS has transferred the mortgage to

---

[1]  Where a fact is not in dispute, the court cites directly to Moving Defendants' CSF.

DBNTC.  Defs.' Ex. 8.  That same day, DBNTC's servicing agent American Home Mortgage Servicing, Inc. ("AHMSI") commenced a nonjudicial foreclosure action of DBNTC's interests under the mortgage by recording a Notice of Mortgagee's Intention to Foreclose Under Power of Sale.  Defs.' Ex. 9.  Pursuant to that notice, on July 22, 2009, the subject property was sold through auction to DBNTC.  Defs.' Exs. 11-12.

The same day as the auction, Plaintiff sent via certified mail a letter cancelling the loan transaction due to alleged TILA violations.  *See* Pl.'s Exs. H, I. The letter was delivered to DBNTC on July 24, 2009.  Pl.'s Ex. I.

## B.     Procedural Background

On July 22, 2009, Plaintiff filed this action in the First Circuit Court of the State of Hawaii.  Plaintiffs' FAC alleges claims against Defendants[2] titled (1) Declaratory Judgment Re: Title to the Subject Property Against Deutsche Bank (Count I); (2) Declaratory Judgment Re: Fraud and Rescission and Common Law Damages Against Amerifund, MERS, and Deutsche Bank (Count II); (3) Declaratory Judgment Re: Chapter 480 HRS Rescission and Treble Damages Against Amerifund, MERS, and Deutsche Bank (Count III); (4) Injunctive Relief

---

[2] Although Amerifund was served with the Complaint on October 22, 2009, it has not appeared in this action and default was entered against it on May 12, 2010.  *See* Doc. No. 21.

5

Against Deustche Bank and Real Time (Count IV); (5) Declaratory Judgment Re: TILA and RESPA Statutory Damages Against Amerifund, MERS, and/or Deutsche Bank (Count V); (6) Breach of Fiduciary Duty Against Amerifund (Count VI); and (7) Punitive Damages Against Amerifund (Count VII). DBNTC subsequently removed the action to this court.

On December 29, 2010, Moving Defendants filed their Motion for Summary Judgment. Plaintiff filed a Concise Statement on March 8, 2011, and an Opposition on March 9, 2011.[3] Moving Defendants filed a Reply on March 14, 2011. A hearing was held on March 29, 2011. Plaintiff filed a supplemental memorandum on March 30, 2011.

### III. STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."

_____

[3] Because Plaintiff's Opposition was due March 7, 2011, Moving Defendants request that the court strike it as untimely filed. Although Plaintiff did not seek an extension to file his Opposition and his delay is inexplicable given that he had almost three months to draft it, the court finds that such sanction under these circumstances is not warranted. Both Plaintiff and his counsel (who has multiple mortgage foreclosure actions before this court and who has missed filing deadlines in other cases) is cautioned, however, that the court expects parties to follow the rules of this court and further violation of this court's rules may result in sanctions.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at

248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

## IV. DISCUSSION

As a starting place, the court first must determine the precise factual basis of Plaintiff's claims. The FAC asserts in very general terms that Amerifund engaged in various misdeeds in consummating the loan with Plaintiff, and Plaintiff's claims against Moving Defendants are based on Amerifund's misconduct. FAC ¶¶ 10-13. At the hearing, however, Plaintiff's counsel argued that Plaintiff also asserts claims against Moving Defendants for misconduct that occurred in the transfer of the mortgage to DBNTC and DBNTC's failure to honor Plaintiff's rescission. The FAC, however, does not include any facts that would give notice to Defendants, much less the court, that Plaintiff is asserting such claims. Specifically, although the FAC asserts that (1) DBNTC noticed a nonjudicial auction of the subject property without proof that the loan was in default or that DBNTC was the current assignee, and (2) Plaintiff cancelled the

loan transaction, *id.* ¶¶ 14-15, the FAC does not assert that DBNTC was not an assignee of the mortgage loan or engaged in any particular misconduct in the nonjudicial auction. Indeed, the actual counts of the FAC refer to "mortgage fraud" and/or "deceit and misrepresentation," and the only factual allegations suggesting misconduct are regarding the loan consummation. *Id.* ¶¶ 17-21. Further, given that Plaintiff provided his notice of rescission on the day this action and the FAC were filed, any failure to honor a rescission notice necessarily occurred later and is not part of the FAC. Plaintiff has not sought to amend the FAC to include such allegations in this action, and the court therefore finds that they are not part of the present dispute between the parties.

As to Plaintiff's actual claims, the FAC asserts a total of five separate Counts against Moving Defendants based on this conduct, but these Counts assert only four legal bases for relief: TILA (Count V); RESPA (also Count V), common law fraud (Count II), and violation of Hawaii Revised Statutes ("HRS") § 480-2 (Count III). As to the RESPA violation, the FAC fails to include any allegations whatsoever explaining the basis of this claim, and for that reason Moving Defendants argue that this claim fails. Defs.' Mot. at 13. Plaintiff failed to oppose this argument and the court agrees that the FAC does not assert a RESPA claim.[4]

_____

[4] In addition to these claims, the FAC refers to violations of "due process" and "all
(continued...)

As to Counts I and IV, neither are stand-alone claims. Specifically, Count I does not assert a legal claim, but rather seeks a declaration that the foreclosure and transfer of the subject property to DBNTC is void "due to mortgage fraud in violation of federal and state law" such that the transfer should be set aside and Plaintiff should be awarded his damages. FAC ¶ 17. The alleged violations of federal and state law, however, are already recited in other claims.

Similarly, Count IV does not state a legal claim and instead seeks injunctive relief to prevent the transfer of the title of the subject property and otherwise prevent DBNTC from further damaging Plaintiff's finances. FAC ¶ 20. It is well-settled, however, that injunctive relief is only a possible *remedy* if Plaintiff succeeds on one of his independent causes of action; it is not its own cause of action. *See, e.g.*, *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action"); *Henke v. Arco Midcon, L.L.C.*, --- F. Supp. 2d ---- , 2010 WL 4513301, at *6 (E.D. Mo. Nov. 2, 2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); *Plan Pros, Inc. v. Zych*, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009) ("no independent cause of action for

_____

[4](...continued)
related federal consumer protections [a]cts." *See* FAC ¶¶ 17, 21, 22. Given that the FAC fails to outline any facts that would support the basis of such claims, the court concludes that like the RESPA claim, Plaintiff is not actually asserting these claims.

injunction exists"); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same).

Thus, the court finds that Plaintiff is asserting claims against Moving Defendants for violation of TILA, common law fraud, and violation of HRS § 480-2, all stemming from Amerifund's alleged misconduct. The court addresses the parties' arguments as they relate to these claims.

## A. TILA

In support of a TILA violation, paragraph 21 of the FAC asserts:

> Beazie seeks a declaratory judgment that said 2007 Note and said 2007 Mortgage and as may have been assigned, as a result of said mortgage fraud, violate the Federal Truth-In-Lending Act, Section 1601, as amended, *et seq.*, . . . and that therefore Beazie is entitled to statutory damages, as well as his actual damages against Amerifund, MERS, and/or Deutsche Bank and subsequent assignees of theirs, including attorneys' fees and costs and including against Does once identified, as appropriate pursuant to Section 1640(a) of Title 15 of the United States Code and other such federal consumer protection Acts, as their individual involvement may warrant.

When read with Count I's request that the current title to the subject property be set aside, it appears that Plaintiff is asserting a TILA claim for both damages and rescission.

## 1.  **TILA Damages**

Moving Defendants argue, among other things,[5] that this claim is time-barred.  The court agrees.

TILA provides that any claim for damages must be brought "within one year from the date of the occurrence of the violation," 15 U.S.C. § 1640(e), which generally begins to run from the date of consummation of the loan.  *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).  Equitable tolling may nonetheless apply in certain circumstances:

> [T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but . . . the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action.  Therefore, as a general rule, the limitations period starts at the consummation of the transaction.  The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

*Id.*; *see also 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999).

The basis of Plaintiff's TILA claim is mortgage fraud -- *i.e.*, alleged

---

[5]  Moving Defendants raise a number of arguments on each of Plaintiff's claims; the court addresses only those arguments necessary to determine the Motion.

misconduct that occurred in consummating the mortgage loan -- which occurred on March 26, 2007.  Accordingly, Plaintiff was required to bring this action within one year unless equitable tolling applies.  Plaintiff has come forward with no evidence, however, suggesting that he is entitled to tolling because any Defendant either prevented Plaintiff from discovering the alleged TILA violations or caused Plaintiff to allow the filing deadline to pass.  Given that Plaintiff entered into the loan transaction on March 26, 2007, and did not file this action until November 22, 2009, the statute of limitations on this claim has long passed.

In opposition, Plaintiff argues that he "is not requesting damages relating to what happened at the closing of his loan, but as a result of MERS and [DBNTC's] failure to honor his TILA rescission."  Pl.'s Opp'n ¶ 78.  As explained above, however, the FAC does not assert any facts supporting such claim. Specifically, the FAC asserts that on July 22, 2009 (the date of the auction and the date this action was filed), Plaintiff canceled the mortgage transaction based on alleged TILA violations by mailing a letter to Defendants.  *See* FAC ¶ 15; Pl.'s Exs. H, I.  But the FAC does not assert that Moving Defendants failed to honor this cancellation.  Indeed, Moving Defendants did not receive the rescission notice until two days after this action was filed such that the FAC could not include such allegations.  *See* Pl.'s Ex. I (certified mail receipt showing DBNTC received

Plaintiff's letter on July 24, 2009).  Thus, the Complaint does not assert a claim against Moving Defendants for failure to honor a rescission request.[6]  *See Rodrigues v. Newport Lending Corp*., 2010 WL 4960065, at *6 (D. Haw. Nov. 29, 2010) (addressing similar circumstances where notice of rescission was sent on the same day as action was filed and granting summary judgment because "Plaintiffs cannot seek damages for Defendants' failure to honor a request for rescission before Defendants received such request and had an opportunity to respond to it").

Accordingly, the court GRANTS Moving Defendants' Motion for Summary Judgment as to Plaintiff's claim for TILA damages.

### 2.    *TILA Rescission*

Moving Defendants argue that they are entitled to summary judgment on Plaintiff's TILA claim for rescission because there is no genuine issue of material fact that Plaintiff is able to tender the loan proceeds.

TILA contemplates that a once a creditor receives a notice of rescission, the creditor shall return any money or payments received and terminate the security interest, and afterwards, the borrower must tender the loan or property. Specifically, 15 U.S.C. § 1635(b) provides:

---

[6] Even if Plaintiff sought to amend the FAC to include allegations that Defendants failed to honor his request for rescission, such claim would fail.  As explained below, Plaintiff is not entitled to rescission such that any request for rescission was ineffective.

Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. . . . Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.

Despite this sequence of events outlined in § 1635(b), the court may require borrowers to prove ability to pay as a condition of rescission. The Ninth Circuit has explained:

As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so *before* deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

*Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1173 (9th Cir. 2003) (affirming summary judgment for lender in absence that borrowers could refinance or sell the

property); *see also Henderson v. GMAC Mortg. Corp.*, 347 Fed. Appx. 299, 302

(9th Cir. 2009) (acknowledging that the court could require borrowers to prove

ability to tender before granting them the right to rescind); *Am. Mortg. Network,*

*Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007) ("Once the trial judge in this case

determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy

of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d

1360, 1362 (9th Cir. 1976) ("We conclude, however, that the district court erred in

not conditioning rescission on the tender of the net amounts advanced by the

Johnsons.  The discretion of the court to impose this condition is settled.").

        Based upon the evidence presented, the court exercises its discretion

in finding that rescission should be conditioned on Plaintiff's tender of the loan

proceeds.  Requiring Plaintiff to prove an ability to tender ensures that rescission is

more than a hollow remedy and that the parties will be placed in the positions they

held before consummation of the loan transaction.  As Plaintiff admitted in his

deposition, however, he is unable to tender the loan proceeds.  *See* Defs.' Ex. 2 at

83.  Plaintiff offers no other means of placing the parties in the positions they held

before consummation of the loan transaction, and suggests no reason why the

particular circumstances of this action suggest that Plaintiff should not be required

to tender the loan proceeds before DBNTC releases the mortgage.  *See Riopta v.*

*Amresco Residential Mortg. Corp.*, 101 F. Supp. 2d 1326, 1334-35 (D. Haw. 1999) (rejecting argument that the TILA violations were so egregious to change the court's discretion in requiring plaintiffs to tender the loan proceeds before mortgagee released security interest in the property). Without the ability to meaningfully tender, Plaintiff has not established a genuine issue of material fact that he is entitled to rescission pursuant to TILA.

In opposition, Plaintiff argues that the Board of Governors of the Federal Reserve Board administratively overruled the proposition that a court may require a borrower to tender the loan proceeds before the transaction is voided. Pl.'s Suppl. Opp'n at 8-10. Plaintiff is mistaken -- he relies upon language of a proposed rule, not language that was actually adopted, and the current regulations specifically acknowledge that the court may determine the order of steps for rescission. Specifically, 12 C.F.R. 226.15(d) provides:

> Effects of rescission.
> (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void, and the consumer shall not be liable for any amount, including any finance charge.
> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has

met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. . . .

(4) *The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order*.

(emphasis added).[7]

In sum, both *Yamamoto* and the regulations acknowledge the court's discretion to reorder the steps of rescission outlined in 15 U.S.C. § 1635(b) to require that Plaintiff first establish that he is able to place the parties in the positions they previously held before the transaction is declared void. In light of the evidence presented that Plaintiff cannot tender the loan proceeds and that he has offered no other solution of placing the parties back to original positions, the court finds that Plaintiff cannot succeed on his claim for TILA rescission.

The court therefore GRANTS Moving Defendants' Motion for Summary Judgment on Plaintiff's claim for rescission pursuant to TILA.

## B.    Common Law Fraud

While not entirely clear, the FAC appears to state a claim for fraud

---

[7] Plaintiff also relies on cases from other circuits and that were decided prior to *Yamamoto* to suggest that borrowers should not be required to tender before the court adjudicates the validity of their rescission claim. *See* Pl.'s Suppl. Opp'n at 2-4. These cases are not binding and in any event do not conflict with *Yamamoto's* recognition that the court has discretion in altering the order of the steps for rescission.

against all Defendants based on the consummation of the mortgage loan.

Specifically, paragraph 18 of the FAC alleges:

> Beazie seeks a declaratory judgment that said 2007 Note and said 2007 Mortgage and as may have been assigned are void and unenforceable as procured by deceit and misrepresentation, with entitlement to actual damages, including attorneys' fees and costs and including against Does once identified, as found to be appropriate upon the trial of this case.

Moving Defendants argue that this claim fails as to them because the FAC does not assert that they committed any wrongful acts. Plaintiff does not dispute this fact, and instead argues that "[h]e seeks instead a judgment declaring the Amerifund loan transaction fraudulent and unenforceable, and hence unenforceable by [DBNTC]." Pl.'s Opp'n ¶ 49. In other words, Plaintiff is not seeking damages against Moving Defendants and instead only seeks that the court declare that Moving Defendants cannot enforce the mortgage loan transaction and that the parties should be returned to their positions before the loan. Plaintiff's argument is not supported in law.

To establish that the loan transaction is void as to Moving Defendants -- who were not a party to the loan transaction -- Plaintiff must establish that the transaction is void, and not merely voidable. This distinction is necessary because a void note is invalid even as to a bona fide purchaser, whereas a voidable

document cannot be set aside as to a bona fide purchaser. *Adair v. Hustace*, 64 Haw. 314, 320 n.4, 640 P.2d 294, 299 n.4 (1982); *see also In re Hokulani Square, Inc.*, 413 B.R. 706, 714 (Bkrtcy. D. Haw. 2009).

　　　　To establish that the mortgage transaction is void for fraud -- and can be canceled against a bona fide purchaser such as DBNTC[8] -- Plaintiff must establish fraud in the factum, as opposed to fraud in the inducement. *See Aames Funding Corp. v. Mores*, 107 Haw. 95, 103-104, 110 P.3d 1042, 1050-51 (Haw. 2005) (explaining the three types of fraud in the mortgage context, including fraud in the factum, fraud in the inducement, and constructive fraud); *Adair*, 64 Haw. at 320 n.4, 640 P.2d at 299 n.4; *Standard Fin. Co. v. Ellis*, 3 Haw. App. 614, 619, 657 P.2d 1056, 1060 (1983). "Fraud in the factum is fraud which goes to the nature of the document itself." *Aames Funding Corp.*, 107 Haw. at 103, 110 P.3d at 1050 (quotations omitted); *Gonsalves v. Ikei*, 47 Haw. 145, 147, 384 P.2d 300, 303 (1963). A "common illustration" of this type of fraud "is that of the 'maker who is tricked into signing a note in the belief that it is merely a receipt or some other

_____

[8] Although Plaintiff asserts that the mortgage assignment to DBNTC is fraudulent, *see* Pl.'s Decl. ¶ 13, Plaintiff offers no evidence to support that Moving Defendants engaged in any fraud whatsoever that would call into question DBNTC's status as a bona fide purchaser.
　　Further, even if Plaintiff could somehow establish that Moving Defendants were not entitled to bona fide purchaser status, Plaintiff would still have no remedy because, as the court finds regarding Plaintiff's claims for violations of TILA and HRS § 480-2, Plaintiff is not entitled to rescission where he cannot tender the loan proceeds. Such analysis applies equally to this fraud claim.

document.'" *Standard Fin. Co.*, 3 Haw. App. at 619, 657 P.2d at 1060 (quoting U.C.C. § 3-305, comment 7); *see also* Black's Law Dictionary 732, fraud in the factum (9th ed. 2009) ("Compared to fraud in the inducement, fraud in the factum occurs only rarely, as when a blind person signs a mortgage when misleadingly told that it is just a letter."). In comparison, "[f]raud in the inducement is fraud which induces the transaction by misrepresentation of motivating factors." *Aames Funding Corp.*, 107 Haw. at 103-04, 110 P.3d at 1050-51 (quotations omitted).

The FAC asserts fraud in the inducement -- that Amerifund's alleged fraud prevented Plaintiff from understanding the details of the mortgage transaction. *See* FAC ¶¶ 11-13. In contrast, the FAC does not assert fraud in the factum -- Plaintiff knew he was entering into a mortgage loan transaction on the subject property. Further, in response to Moving Defendants' argument that they did not engage in any wrongful conduct, Plaintiff came forward with evidence suggesting at most fraud in the inducement and not fraud in the factum. Accordingly, even if Amerifund induced Plaintiff into entering into a mortgage transaction that he otherwise would not have entered into, the transaction is only voidable such that Plaintiff cannot seek rescission and/or cancellation of this transaction against Moving Defendants, who were not a party to the fraudulent transaction.

The court therefore GRANTS Moving Defendants' Motion for Summary Judgment on Plaintiff's claim for fraud.

## C.    HRS § 480-2

Plaintiff asserts a claim for violation of HRS § 480-2 against all Defendants based on Amerifund's alleged unfair or deceptive acts or practices in consummating the mortgage loan. *See* FAC ¶ 20. Although Plaintiff recognizes that Moving Defendants committed no unfair or deceptive practices relating to the consummation of the loan, § 480-12 provides that "[a]ny contract or agreement in violation of this chapter is void and is not enforceable at law or in equity." Plaintiff therefore seeks to have the court declare the mortgage and note "void and unenforceable," entitling him to rescission against Moving Defendants and any and all subsequent assignees. FAC ¶ 19.[9]

Moving Defendants argue, among other things, that even if there were any § 480-2 violations, Plaintiff is still not entitled to the relief he seeks where he cannot tender the loan proceeds. Based on the following, the court agrees that

---

[9] Although the FAC also seeks damages "against Amerifund and its successors and assigns," FAC ¶ 19, Plaintiff offers no basis for why damages based on Amerifund's alleged violations of HRS § 480-2 would be appropriate against Moving Defendants -- there is no evidence that Moving Defendants engaged in any misconduct in consummating the loan transaction and Plaintiff does not suggest any basis for why Moving Defendants should be held liable in damages for Amerifund's violations of HRS § 480-2. The court therefore addresses the §480-2 claim as seeking declaratory relief against Moving Defendants.

there is no genuine issue of material fact that Plaintiff is not entitled to the relief of voiding the transaction where he cannot return the parties as close as possible to their original position before the transaction took place.

Hawaii courts have not addressed the particular issue of what remedies a borrower is entitled to based on HRS § 480-12's mandate that contracts in violation of Chapter 480 are void and unenforceable.  It is clear enough from the plain language of § 480-12 that if a plaintiff seeks to enforce a contract that violates Chapter 480, a defendant may raise § 480-12 as a defense to the action. *See, e.g.*, *808 Dev., LLC v. Murakami*, 111 Haw. 349, 357, 141 P.3d 996, 1004 (2006) (holding that the plaintiff was not entitled to a mechanic's lien on defendant's property where the contract under which the work was performed was void pursuant to § 480-12, but that the plaintiff could seek relief for quantum meruit); *Hiraga v. Baldonado*, 96 Haw. 365, 372-73, 31 P.3d 222, 229-30 (Haw. App. 2001) (similar); *see also Beneficial Haw., Inc. v. Kida*, 96 Haw. 289, 312 30 P.3d 895, 918 (2001) ("When a statute requiring a license declares void contracts 'made' by an unlicensed person, the violation of the statute is a defense to enforcement of the instrument even against a holder in due course.").  What is not so clear -- and what Hawaii courts have not addressed -- is what remedies are available to a plaintiff who seeks to affirmatively void a contract in violation of Chapter 480.

As a starting point, the Hawaii Supreme Court has recognized that Chapter 480 should not result in a windfall to any party, but rather place them as close as possible to the position they held before unfair or deceptive acts or practices.  For example, in determining appropriate equitable relief for violations of Chapter 480, the Hawaii Supreme Court has relied on the common law fraud principle that an injured person should be put "in the position he would have been had he not been defrauded."  *Leibert v. Fin. Factors, Ltd.*, 71 Haw. 285, 290, 788 P.2d 833, 837 (1990) (quoting *Ellis v. Crockett*, 51 Haw. 45, 52, 451 P.2d 814, 820 (1969); *see also Davis v. Wholesale Motors, Inc*., 86 Haw. 405, 421, 949 P.2d 1026, 1042 (Haw. App. 1997) ("Correspondingly, while a plaintiff should be compensated for loss suffered, he or she should not be permitted to reap a benefit received from the defendant under the contract.");  *see also Hiraga*, 96 Haw. at 370, 31 P.3d at 227.

To illustrate this point, *Davis*, 86 Haw. at 421, 949 P.2d at 1042, relied upon *Majcher v. Laurel Motors*, 680 N.E.2d 416, 422 (Ill. App. 1997), which found that a plaintiff who was entitled to rescission under the Illinois Consumer Fraud and Deceptive Business Practices Act should return "any consideration or property received" and "account for any benefits it received from the other party under the contract."  Agreeing with *Majcher*, *Davis* reasoned that accounting for the benefits a plaintiff receives makes common sense because "a

24

plaintiff cannot be unjustly enriched at a defendant's expense simply because the defendant is liable for unfair or deceptive trade practices." *Id.*

Turning to this action, merely voiding the transaction on its own is not an appropriate remedy because Plaintiff would receive a windfall of holding title to the subject property free and clear of any mortgage, as well as taking benefit of the $1.26 million that was originally loaned by Amerifund. In comparison, Deutsche Bank would have neither an enforceable note nor mortgage. This windfall for Plaintiff, at DBNTC's expense, runs wholly counter to the Hawaii courts' acknowledgment that a plaintiff cannot "be unjustly enriched at a defendant's expense simply because the defendant is liable for unfair or deceptive trade practices." *Davis*, 86 Haw. at 421, 949 P.2d at 1042.

That merely voiding the transaction (and not requiring Plaintiff to establish ability to put DBNTC in the position it held prior to the transaction) is improper is confirmed by other authorities. For example, 17A Am. Jur. 2d Contracts § 301, explains that a party seeking to void a contract must first return the benefits received:

> A party to an illegal agreement will not be permitted to avail himself or herself of its illegality until he or she restores to the other party all that has been received from such a party on the illegal agreement.

Indeed, avoidance of a contract and restitution and/or rescission, *i.e.*, treating the

agreements as void *ab initio* and placing the parties in the positions they held prior to the transaction, go hand-in-hand to carry out this result and prevent a windfall to one party.  *See Lee v. HSBC Bank USA*, 121 Haw. 287, 292, 218 P.3d 775, 780 (2009) (holding that where an agreement created at a foreclosure sale is void and unenforceable for failure to comply with HRS § 667-5, then "[t]he high bidder at such a sale is entitled only to return of his or her downpayment plus accrued interest"); *Bischoff v. Cook,* 118 Haw. 154, 162, 185 P.3d 902, 910 (Haw. App. 2008) ("Where a contract has been avoided, the plaintiff is asking only that the contract be declared null and void and that restitution be awarded."); *Hiraga*, 96 Haw. at 372, 31 P.3d at 229 (holding that even though plaintiff-general contractor could not enforce contract that was void pursuant to HRS § 480-12, he could still recover in quantum meruit for work performed according to the contract); *see also Pan-American Petroleum & Transp. Co. v. United States*, 273 U.S. 456, 505 (1927) (collecting cases discussing void contracts and holding that rescission requires that the "the party against whom relief is sought shall be remitted to the position he occupied before the transaction complained of"); *Estate of Luster v. Allstate Ins. Co.*, 598 F.3d 903, 907-08 (9th Cir. 2010) (providing that under Indiana law, a "contract is voidable at the election of the injured party.  If he elects to affirm the transaction, he has his remedy by way of damages.  If he elects to rescind, he must return back what he has received, and in turn he is entitled to

receive what he has parted with"); *Williams v. Homestake Mortg. Co.*, 968 F.2d

1137 (11th Cir. 1992) ("Under common law rescission, the rescinding party must

first tender the property that he has received under the agreement before the

contract may be considered void. Once the rescinding party has performed his

obligations, the contract becomes void and the rescinding party may then bring an

action in replevin or assumpsit to insure that the non-rescinding party will restore

him to the position that he was in prior to entering into the agreement, *i.e.*, return

earnest money or monthly payments and void all security interests." (citations

omitted)); *Cestro v. LNV Corp.*, 2010 WL 4642488, at *3 (D. Ariz. Nov. 9, 2010)

("[E]ven if the Court were to find that the loan was void due to Ms. Cestro's

incapacity, the equitable remedy of rescission would require Ms. Cestro to tender

the loan proceeds to Defendant LNV Corporation.").

Thus, the court finds that to void the mortgage transaction as Plaintiff

seeks pursuant to HRS § 480-12, Plaintiff must establish that he can place the

parties in as close a position as they held prior to the transaction. There is no

genuine issue of material fact, however, that Plaintiff can place the parties back to

their original positions by, for example, tendering the loan proceeds. And Plaintiff

has presented no evidence of any alternative way that he could possibly place the

parties back to their original positions. Where Plaintiff has not established the

basis for any remedy against Moving Defendants for Amerifund's alleged violation

of HRS § 480-2, the court cannot grant him relief on this claim.

Accordingly, the court finds that Plaintiff's Chapter 480 claim against Moving Defendants fails because the court can offer Plaintiff no remedy. The court GRANTS the Motion as to Plaintiff's § 480-2 claim against Moving Defendants.

## V. <u>CONCLUSION</u>

Based on the above, the court GRANTS Moving Defendants' Motion for Summary Judgment. As a result of this Order, Plaintiff's claims against Amerifund remain. Because default was entered against Amerifund on May 10, 2010, the court orders Plaintiff to seek default judgment against Amerifund by May 13, 2011 or these remaining claims will be dismissed for lack of prosecution.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 13, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Beazie v. Amerifund Fin., Inc.*, Civ. No. 09-00562 JMS/KSC, Order Granting Defendants Mortgage Electronic Registration Systems, Inc. and Deutsche Bank National Trust Company as Trustee for American Mortgage-backed Pass-through Certificates, Series 2007-5's Motion for Summary Judgment