IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| VINCENT TOD BEAZIE, Individually and as Trustee of the Vincent T. Beazie Revocable Living Trust Dated April 17, 2001,<br><br>          Plaintiff,<br><br>   vs.<br><br>AMERIFUND FINANCIAL, INC. dba ALL FUND MORTGAGE, a Washington corporation registered previously as a foreign corporation doing unlicensed business in the State of Hawaii, its successors and assigns; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation; DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for American Mortgage-Backed Pass-Through Certificates, Series 2007-5, a New York corporation; and DOES 1-30,<br><br>          Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 09-00562 JMS/KSC<br><br>AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR AMERICAN MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-5'S MOTION FOR SUMMARY JUDGMENT |

<u>**AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR AMERICAN MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-5'S MOTION FOR SUMMARY JUDGMENT**</u>

# I. **INTRODUCTION**

On July 22, 2009, Plaintiff Vincent Tod Beazie, Individually and as Trustee of the Vincent T. Beazie Revocable Living Trust Dated April 17, 2001 ("Plaintiff") filed this action in the First Circuit Court of the State of Hawaii. Plaintiff's First Amended Complaint ("FAC") asserts claims against Defendants Amerifund Financial Inc. dba All Fund Mortgage ("Amerifund"), Mortgage Electronic Registration Systems ("MERS"), and Deutsche Bank National Trust Company as Trustee for American Mortgage-backed Pass-through Certificates, Series 2007-5 ("DBNTC" or "Deutsche Bank") for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601, *et seq.*, and various state law claims stemming from a mortgage transaction concerning real property located at 91-423 Pupu Street, Ewa Beach, Hawaii 96706 (the "subject property"). The action was subsequently removed to this court.

Currently before the court is MERS and DBNTC's (collectively, "Moving Defendants") Motion for Summary Judgment in which they argue that there is no genuine issue of material fact supporting any of Plaintiff's claims against them. On April 14, 2011, the court originally granted Moving Defendants' Motion for Summary Judgment ("the April 14 Order"), *Beazie v. Amerifund Fin.,*

*Inc.*, 2011 WL 1437888 (D. Haw. Apr. 14, 2011), and Plaintiff filed a Motion for Reconsideration on April 9, 2011.  As a result, the court vacated the April 14, 2011 Order and now enters this Amended Order GRANTING in part and DENYING in part Moving Defendants' Motion for Summary Judgment, which addresses the parties' arguments both on summary judgment and for reconsideration.

## II. <u>BACKGROUND</u>

### A.    Factual Background

On March 26, 2007, Plaintiff refinanced his existing loan on the subject property by executing an adjustable rate note in the amount of $1,260,000 in favor of Amerifund, which was secured by a mortgage on the subject property. Doc. No. 34-2, Defs.' Ex. 1; Doc. No. 34-4, Defs.' Ex. 3.  The mortgage explains that MERS is the mortgagee, and is "acting solely as nominee" for Amerifund. Doc. No. 34-4, Defs.' Ex. 3 at 1-2.

In consummating this loan, Plaintiff signed a Uniform Residential Loan Application (the "Application"), which states that Plaintiff was applying for a 480-month adjustable rate mortgage in the amount of $1,260,000.  Doc. No. 34-3, Defs.' Ex. 2 at 56; Doc. No. 34-5, Defs.' Ex. 4 at 1.  The Application states that Plaintiff acknowledges that "the information provided in this application is true and correct as of the date set forth opposite my signature," and Plaintiff admits that

he signed this acknowledgment.  Doc. No. 34-3, Defs.' Ex. 2 at 58-59; Doc. No. 34-5, Defs.' Ex. 4 at 3.  The Application nonetheless included false information, including that Plaintiff's gross monthly income was $18,000 when in fact it was much less.  Doc. No. 37-1, Pl.'s Decl. ¶ 6.

In addition to the Application, Plaintiff signed the note, mortgage, Adjustable Rate Mortgage Loan Disclosure Statement, TILA Disclosure Statement, and Notice of Right to Cancel.  *See* Doc. No. 34, Defs.' Concise Statement of Facts ("CSF") ¶ 7.[1]  Although Plaintiff acknowledged that his signature indicates that he received these documents, Doc. No. 34-3, Defs.' Ex. 2 at 78-81, Plaintiff disputes that he received two completed and accurate copies of the Notice of the Right to Cancel.  Doc. No. 37-1, Pl.'s Decl. ¶ 7.  Plaintiff further conceded that he understood that the interest rate on the loan would change, but believed that his payment would not exceed more than $100 of his initial monthly payment.  Doc. No. 34-3, Defs.' Ex. 2 at 60-61.  Plaintiff understood, however, that he would be responsible for any default on the loan.  *Id.* at 61.

According to Plaintiff, he was aware there was another appointment after him such that he had only a half hour to complete the documents, but nobody told him that he had only a specific amount of time to review and sign the

---

[1]  Where a fact is not in dispute, the court cites directly to Moving Defendants' CSF.

documents or that he needed to hurry.  *Id.* at 57, 62.  Plaintiff asserts that although his signature states that he read and understood the documents, he did not read each document because he relied "on the professionality [sic] of the qualified person" to sign the documents and that it is "common practice" to sign without reading them.  *Id.* at 59, 66, 70.

In November 2008, Plaintiff started defaulting on the loan.  *Id.* at 60. On June 1, 2009, an "Assignment of Mortgage" was recorded in the Hawaii State Bureau of Conveyances, asserting that MERS had transferred the mortgage to DBNTC.  Doc. No. 34-9, Defs.' Ex. 8.  That same day, DBNTC's servicing agent American Home Mortgage Servicing, Inc. ("AHMSI") commenced a nonjudicial foreclosure action of DBNTC's interests under the mortgage by recording a Notice of Mortgagee's Intention to Foreclose Under Power of Sale.  Doc. No. 34-9, Defs.' Ex. 9.  Pursuant to that notice, on July 22, 2009, the subject property was sold through auction to DBNTC.  Doc. No. 34-12, Defs.' Ex. 11; Doc. No. 34-13, Defs.' Ex. 12.

The same day as the auction, Plaintiff sent via certified mail a letter cancelling the loan transaction due to alleged TILA violations.  *See* Doc. No. 37-9, Pl.'s Ex. H; Doc. No. 37-10, Pl.'s Ex. I.  The letter was delivered to DBNTC on July 24, 2009.  Doc. No. 37-10, Pl.'s Ex. I.

**B.    Procedural Background**

On July 22, 2009, Plaintiff filed this action in the First Circuit Court of the State of Hawaii.  Plaintiff's FAC alleges claims against Defendants[2] titled (1) Declaratory Judgment Re: Title to the Subject Property Against Deutsche Bank (Count I); (2) Declaratory Judgment Re: Fraud and Rescission and Common Law Damages Against Amerifund, MERS, and Deutsche Bank (Count II); (3) Declaratory Judgment Re: Chapter 480 HRS Rescission and Treble Damages Against Amerifund, MERS, and Deutsche Bank (Count III); (4) Injunctive Relief Against Deustche Bank and Real Time (Count IV); (5) Declaratory Judgment Re: TILA and RESPA Statutory Damages Against Amerifund, MERS, and/or Deutsche Bank (Count V); (6) Breach of Fiduciary Duty Against Amerifund (Count VI); and (7) Punitive Damages Against Amerifund (Count VII).  DBNTC subsequently removed the action to this court.

On December 29, 2010, Moving Defendants filed their Motion for Summary Judgment.  Plaintiff filed a Concise Statement on March 8, 2011, and an Opposition on March 9, 2011.  Moving Defendants filed a Reply on March 14,

---

[2]  Although Amerifund was served with the Complaint on October 22, 2009, it has not appeared in this action and default was entered against it on May 12, 2010.  *See* Doc. No. 21. Plaintiff has asserted that he will seek dismissal of Amerifund without prejudice upon the court's determination of Plaintiff's Motion for Reconsideration.  *See* Doc. No. 49, Gary Dubin Decl. ¶ 9. Plaintiff is requested to seek dismissal of Amerifund by July 1, 2011.

2011.  A hearing was held on March 29, 2011.  Plaintiff filed a Supplemental Memorandum on March 30, 2011.

The April 14 Order followed.  On April 29, 2011, Plaintiff filed his Motion for Reconsideration.[3]  On May 13, 2011, Moving Defendants filed their Opposition, and Plaintiff filed a Reply on May 27, 2011.  Contemporaneously with this Order the court granted in part and denied in part Plaintiff's Motion for Reconsideration and vacated the April 14 Order.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."

---

[3]  Plaintiff has made a habit of filing papers late -- Plaintiff's Opposition to Moving Defendants' Motion for Summary Judgment was due March 7, 2011, and Plaintiff's Motion for Reconsideration was due by April 28, 2011.  *See* Local Rule 60.1.  Moving Defendants request that the court strike both filings as untimely filed.  As to Plaintiff's Opposition, although Plaintiff did not seek an extension to file it late and his delay is inexplicable given that he had almost three months to draft it, the court finds that such sanction under these circumstances is not warranted.  The court further finds that striking Plaintiff's Motion for Reconsideration is not appropriate given that it raises a valid point for reconsideration.  The court therefore GRANTS Plaintiff's Ex Parte Motion for Extension of Time to File his Motion for Reconsideration.  *See* Doc. No. 49.

With that said, however, both Plaintiff and his counsel (who has multiple mortgage foreclosure actions before this court and who has missed filing deadlines in other cases) is cautioned that the court expects parties to follow the rules of this court and further violation of this court's rules may result in sanctions.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at

248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV.  DISCUSSION

As a starting place, the court first must determine the precise factual basis of Plaintiff's claims.  The FAC asserts in very general terms that Amerifund engaged in various misdeeds in consummating the loan with Plaintiff, and Plaintiff's claims against Moving Defendants are based on Amerifund's misconduct.  Doc. No. 1-1, FAC ¶¶ 10-13.  At the hearing and in his Motion for Reconsideration, however, Plaintiff's counsel argues that Plaintiff also asserts claims against Moving Defendants for misconduct that occurred in the transfer of the mortgage to DBNTC and DBNTC's failure to honor Plaintiff's rescission.[4] The FAC, however, does not include any facts that would give notice to

---

[4] Plaintiff also attempts to inject into the action the assertion that DBNTC is not a holder in due course of the mortgage and/or note due to recording improprieties and various other issues.  *See* Doc. No. 37, Pl.'s CSF ¶¶ 31-33; Doc. No. 46, Pl.'s Recons. Mot. at 7-15; Doc. No. 50, Pl.'s Recons. Reply at 9-11.  Again, Plaintiff is limited by what is alleged in the FAC, and Plaintiff failed to include any such allegations.

Defendants, much less the court, that Plaintiff is asserting such claims. Specifically, although the FAC asserts that (1) DBNTC noticed a nonjudicial auction of the subject property without proof that the loan was in default or that DBNTC was the current assignee, and (2) Plaintiff cancelled the loan transaction, *id.* ¶¶ 14-15, the FAC does not assert that DBNTC was not an assignee of the mortgage loan or engaged in any particular misconduct in the nonjudicial auction. Indeed, the actual counts of the FAC refer to "mortgage fraud" and/or "deceit and misrepresentation," and the only factual allegations suggesting misconduct are regarding the loan consummation. *Id.* ¶¶ 17-21. Further, given that Plaintiff provided his notice of rescission on the day the FAC was filed, any failure to honor a rescission notice necessarily occurred later and is not part of the FAC. Plaintiff has not sought to amend the FAC to include such allegations in this action and it should go without saying that allegations raised only in briefs and not pleadings are not part of a plaintiff's claims. In other words, regardless of when the controversy arose between the parties, *Plaintiff is limited by what is alleged in his FAC.* The court therefore finds that these additional allegations are not part of the present dispute between the parties.

As to Plaintiff's actual claims, the FAC asserts a total of five separate Counts against Moving Defendants based on this conduct, but these Counts assert

only four legal bases for relief: TILA (Count V); RESPA (also Count V), common law fraud (Count II), and violation of Hawaii Revised Statutes ("HRS") § 480-2 (Count III). As to the RESPA violation, the FAC fails to include any allegations whatsoever explaining the basis of this claim, and for that reason Moving Defendants argue that this claim fails. Doc. No. 33-1, Defs.' Summ. J. Mot. at 13. Plaintiff failed to oppose this argument and the court agrees that the FAC does not assert a RESPA claim.[5]

As to Counts I and IV, neither are stand-alone claims. Specifically, Count I does not assert a legal claim, but rather seeks a declaration that the foreclosure and transfer of the subject property to DBNTC is void "due to mortgage fraud in violation of federal and state law" such that the transfer should be set aside and Plaintiff should be awarded his damages. Doc. No. 1-1, FAC ¶ 17. The alleged violations of federal and state law, however, are already recited in other claims.

Similarly, Count IV does not state a legal claim and instead seeks injunctive relief to prevent the transfer of the title of the subject property and otherwise prevent DBNTC from further damaging Plaintiff's finances. *Id.* ¶ 20. It

---

[5] In addition to these claims, the FAC refers to violations of "due process" and "all related federal consumer protections [a]cts." *See* Doc. No. 1-1, FAC ¶¶ 17, 21, 22. Given that the FAC fails to outline any facts that would support the basis of such claims, the court concludes that like the RESPA claim, Plaintiff is not actually asserting these claims.

is well-settled, however, that injunctive relief is only a possible *remedy* if Plaintiff

succeeds on one of his independent causes of action; it is not its own cause of

action. *See, e.g.*, *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201

(E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of

action"); *Henke v. Arco Midcon, L.L.C.*, 750 F. Supp. 2d 1052, 1059-60 (E.D. Mo.

2010) ("Injunctive relief, however, is a remedy, not an independent cause of

action."); *Plan Pros, Inc. v. Zych*, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009)

("no independent cause of action for injunction exists"); *Motley v. Homecomings

Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same).

Thus, the court finds that Plaintiff is asserting claims against Moving

Defendants for violation of TILA, common law fraud, and violation of HRS

§ 480-2, all stemming from Amerifund's alleged misconduct. The court addresses

the parties' arguments as they relate to these claims.

## A.    TILA

In support of a TILA violation, paragraph 21 of the FAC asserts:

> Beazie seeks a declaratory judgment that said 2007 Note
> and said 2007 Mortgage and as may have been assigned,
> as a result of said mortgage fraud, violate the Federal
> Truth-In-Lending Act, Section 1601, as amended, *et seq.*,
> . . . and that therefore Beazie is entitled to statutory
> damages, as well as his actual damages against
> Amerifund, MERS, and/or Deutsche Bank and
> subsequent assignees of theirs, including attorneys' fees

and costs and including against Does once identified, as
appropriate pursuant to Section 1640(a) of Title 15 of the
United States Code and other such federal consumer
protection Acts, as their individual involvement may
warrant.

When read with Count I's request that the current title to the subject property be set

aside, it appears that Plaintiff is asserting a TILA claim for both damages and

rescission.

## 1.     *TILA Damages*

Moving Defendants argue, among other things,[6] that this claim is

time-barred.  The court agrees.

TILA provides that any claim for damages must be brought "within

one year from the date of the occurrence of the violation," 15 U.S.C. § 1640(e),

which generally begins to run from the date of consummation of the loan.  *King v.

California*, 784 F.2d 910, 915 (9th Cir. 1986).  Equitable tolling may nonetheless

apply in certain circumstances:

[T]he limitations period in Section 1640(e) runs from the
date of consummation of the transaction but . . . the
doctrine of equitable tolling may, in the appropriate
circumstances, suspend the limitations period until the
borrower discovers or had reasonable opportunity to
discover the fraud or nondisclosures that form the basis

---

[6] Moving Defendants raise a number of arguments on each of Plaintiff's claims; the
court addresses only those arguments necessary to determine the Motion for Summary Judgment.

13

of the TILA action. Therefore, as a general rule, the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

*Id.*; *see also 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999).

The basis of Plaintiff's TILA claim is mortgage fraud -- *i.e.*, alleged misconduct that occurred in consummating the mortgage loan -- which occurred on March 26, 2007. Accordingly, Plaintiff was required to bring this action within one year unless equitable tolling applies. Plaintiff has come forward with no evidence, however, suggesting that he is entitled to tolling because any Defendant either prevented Plaintiff from discovering the alleged TILA violations or caused Plaintiff to allow the filing deadline to pass. Given that Plaintiff entered into the loan transaction on March 26, 2007, and did not file this action until November 22, 2009, the statute of limitations on this claim has long passed.

In opposition, Plaintiff argues that he "is not requesting damages relating to what happened at the closing of his loan, but as a result of MERS and [DBNTC's] failure to honor his TILA rescission." Doc. No. 38, Pl.'s Summ. J. Opp'n ¶ 78. As explained above, however, the FAC does not assert any facts supporting such claim, and Plaintiff did not seek leave to amend the FAC to allege

this claim. Specifically, the FAC asserts that on July 22, 2009 (the date of the auction and the date the FAC was filed), Plaintiff cancelled the mortgage transaction based on alleged TILA violations by mailing a letter to Defendants. *See* Doc. No. 1-1, FAC ¶ 15; Doc. No. 37-9, Pl.'s Ex. H; Doc. No. 37-10, Pl.'s Ex. I. But the FAC does not assert that Moving Defendants failed to honor this cancellation. Indeed, Moving Defendants did not receive the rescission notice until two days after the FAC was filed such it could not include such allegations. *See* Doc. No. 19, Pl.'s Ex. I (certified mail receipt showing DBNTC received Plaintiff's letter on July 24, 2009). Thus, the Complaint does not assert a claim against Moving Defendants for failure to honor a rescission request. *See Rodrigues v. Newport Lending Corp*., 2010 WL 4960065, at *6 (D. Haw. Nov. 29, 2010) (addressing similar circumstances where notice of rescission was sent on the same day as action was filed and granting summary judgment because "Plaintiffs cannot seek damages for Defendants' failure to honor a request for rescission before Defendants received such request and had an opportunity to respond to it").

Accordingly, the court GRANTS Moving Defendants' Motion for Summary Judgment as to Plaintiff's claim for TILA damages.

### 2.    *TILA Rescission*

Moving Defendants argue that they are entitled to summary judgment

on Plaintiff's TILA claim for rescission for a number of reasons. The court addresses these arguments in turn.

> a. *Inability to tender loan proceeds*

Moving Defendants argue that the court may condition TILA rescission on Plaintiff's tender of the loan proceeds, and there is no genuine issue of material fact that Plaintiff can tender the proceeds. The court agrees with Moving Defendants on their legal proposition, but rejects that the undisputed facts establish Plaintiff's inability to tender.

As for the legal proposition, TILA contemplates that once a creditor receives a notice of rescission, the creditor shall return any money or payments received and terminate the security interest, and afterwards, the borrower must tender the loan or property. Specifically, 15 U.S.C. § 1635(b) provides:

> Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. . . . Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.

Despite this sequence of events outlined in § 1635(b), the court may require borrowers to prove ability to pay as a condition of rescission. The Ninth

Circuit has explained:

> As rescission under § 1635(b) is an on-going process
> consisting of a number of steps, there is no reason why a
> court that may alter the sequence of procedures *after*
> deciding that rescission is warranted, may not do so
> *before* deciding that rescission is warranted when it finds
> that, assuming grounds for rescission exist, rescission
> still could not be enforced because the borrower cannot
> comply with the borrower's rescission obligations no
> matter what. Such a decision lies within the court's
> equitable discretion, taking into consideration all the
> circumstances including the nature of the violations and
> the borrower's ability to repay the proceeds. If, as was
> the case here, it is clear from the evidence that the
> borrower lacks capacity to pay back what she has
> received (less interest, finance charges, etc.), the court
> does not lack discretion to do before trial what it could do
> after.

*Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1173 (9th Cir. 2003) (affirming

summary judgment for lender in absence that borrowers could refinance or sell the

property); *see also Henderson v. GMAC Mortg. Corp.*, 347 Fed. Appx. 299, 302

(9th Cir. 2009) (acknowledging that the court could require borrowers to prove

ability to tender before granting them the right to rescind); *Am. Mortg. Network,*

*Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007) ("Once the trial judge in this case

determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy

of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d

1360, 1362 (9th Cir. 1976) ("We conclude, however, that the district court erred in

not conditioning rescission on the tender of the net amounts advanced by the Johnsons. The discretion of the court to impose this condition is settled.").

Based upon the evidence presented, the court exercises its discretion in finding that rescission should be conditioned on Plaintiff's tender of the loan proceeds. Requiring Plaintiff to prove an ability to tender ensures that rescission is more than a hollow remedy and that the parties will be placed in the positions they held before consummation of the loan transaction. Further, Plaintiff suggests no reason why the particular circumstances of this action support that Plaintiff should not be required to tender the loan proceeds before DBNTC releases the mortgage. *See Riopta v. Amresco Residential Mortg. Corp*., 101 F. Supp. 2d 1326, 1334-35 (D. Haw. 1999) (rejecting argument that the TILA violations were so egregious to change the court's discretion in requiring plaintiffs to tender the loan proceeds before mortgagee released security interest in the property).[7]

---

[7] Plaintiff argues that the court cannot rely on *Riopta v. Amresco Residential Mortgage Corp*., 101 F. Supp. 2d 1326, 1334-35 (D. Haw. 1999), to support the proposition that a borrower must first tender in order to secure a TILA rescission remedy. Doc. No. 46, Pl.'s Recons. Mot. at 4. Plaintiff is mistaken. *Riopta* specifically found that "in the exercise of its equitable discretion, that it is appropriate to condition rescission of the mortgage on Plaintiffs' tender of payment." *Riopta*, 101 F. Supp. at 1334. Although Plaintiff correctly points out that *Riopta* granted "Plaintiffs ninety (90) days from the date of this Order to repay the principal to Amresco," it further ordered that Amresco "shall not be required to release its security interest in the property until Plaintiffs have actually tendered repayment." *Id.* at 1336. Although Plaintiff submits the docket sheet in *Riopta* to show that the plaintiff was given further time to meet his repayment obligations and the court reduced his payment obligations, Doc. No. 50, Pl.'s Recons. Reply at 5-6, it does not change *Riopta's* holding. Further, whatever happened in *Riopta* after

(continued...)

18

In opposition, Plaintiff argues that the Board of Governors of the

Federal Reserve Board administratively overruled the proposition that a court may

require a borrower to tender the loan proceeds before the transaction is voided.

Doc. No. 42, Pl.'s Suppl. Summ. J. Opp'n at 8-10.  Plaintiff is mistaken -- he relies

upon language of a proposed rule, not language that was actually adopted, and the

current regulations specifically acknowledge that the court may determine the

order of steps for rescission.  Specifically, 12 C.F.R. 226.15(d) provides:

> Effects of rescission.
> (1) When a consumer rescinds a transaction, the security
> interest giving rise to the right of rescission becomes
> void, and the consumer shall not be liable for any
> amount, including any finance charge.
> (2) Within 20 calendar days after receipt of a notice of
> rescission, the creditor shall return any money or
> property that has been given to anyone in connection
> with the transaction and shall take any action necessary
> to reflect the termination of the security interest.
> (3) If the creditor has delivered any money or property,
> the consumer may retain possession until the creditor has
> met its obligation under paragraph (d)(2) of this section.
> When the creditor has complied with that paragraph, the
> consumer shall tender the money or property to the
> creditor or, where the latter would be impracticable or
> inequitable, tender its reasonable value. . . .
> (4) *The procedures outlined in paragraphs (d)(2) and (3)
> of this section may be modified by court order*.

---

[7](...continued)
the decision is not persuasive and does not change *Riopta's* reasoning.

(emphasis added).[8]

In sum, both *Yamamoto* and the regulations acknowledge the court's discretion to reorder the steps of rescission outlined in 15 U.S.C. § 1635(b) to require that Plaintiff first establish that he is able to place the parties in the positions they previously held before the transaction is declared void.

With that said, however, the court finds that genuine issues of material fact exist regarding whether Plaintiff can indeed tender the loan proceeds. In effecting a rescission pursuant to TILA, "the security interest is dissolved, the lender returns the borrower's payments, and the borrower returns the loan proceeds, less any 'finance or other charge.'" *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 702 (9th Cir. 1986) (quoting 15 U.S.C. § 1635(b)). A "finance charge" includes interest. *Id.* at 705. Thus, the tender amount can be calculated by taking "the loan amount less all charges in the loan agreement." *Id.*

Using this formula for determining the tender amount, Moving Defendants failed to establish that Plaintiff could not tender this amount. Rather, in his deposition Plaintiff answered a different question of whether he could pay

---

[8] Plaintiff also relies on cases from other circuits and that were decided prior to *Yamamoto* to suggest that borrowers should not be required to tender before the court adjudicates the validity of their rescission claim. *See* Doc. No. 42, Pl.'s Suppl. Summ. J. Opp'n at 2-4. These cases are not binding on this court and in any event do not conflict with *Yamamoto's* recognition that the court has discretion in altering the order of the steps for rescission.

back the loan *plus* its associated fees and costs:

> Q.     So you would not have the financial ability to pay
>        back the $1.26 million plus late fees and costs as
>        called for in the mortgage if that option was
>        presented to you, correct?
> A.     Correct.

Doc. No. 34-3, Defs.' Ex. 2 at 83.  Thus, a genuine issue of material fact remains

whether Plaintiff can tender the loan proceeds.

### b.     *Moving Defendants' additional arguments*

Moving Defendants also argue that they are entitled to summary

judgment on Plaintiff's TILA claim for rescission because there is no genuine issue

of material fact that (1) Plaintiff received two copies of the Right to Cancel Notice;

and (2) Plaintiff received sufficient, accurate, and material disclosures as to the

terms of the loan.  Doc. No. 39, Defs.' Summ. J. Reply at 4-7.  The court disagrees.

Moving Defendants argue that Plaintiff admitted in his deposition that

he did not receive two copies of the Right to Cancel Notice such that Plaintiff

cannot create a genuine issue of material fact by denying this fact in his

Declaration.  Doc. No. 39, Defs.' Summ. J. Reply at 3-4.  During his deposition,

however, Plaintiff acknowledged only that his signature indicates that he received

these documents, not that he actually received the documents.  Doc. No. 34-3,

Defs.' Ex. 2 at 78-81.  Thus, this testimony does not contradict Plaintiff's

Declaration that he did not receive the two copies. *See* Doc. No. 37-1, Pl.'s Decl. ¶ 7. Accordingly, viewing the facts in a light most favorable to Plaintiff, there is a genuine issue of material fact whether Plaintiff received two copies of the Right to Cancel Notice.

As to Moving Defendants' second argument, Moving Defendants fail to explain in any meaningful manner how and why Plaintiff received "sufficient, and accurate, material disclosures as to the terms of the loan." *See* Doc. No. 39, Defs.' Summ. J. Reply at 5. Rather, to establish this fact, Moving Defendants instruct the court to "*Compare* Exh. "3" (Mortgage) *with* Exh. "5" (ARM Disclosures) *and* Exh. "6" (TILA Disclosure) (evidencing a $1.26 million loan, to be repaid over 40 years at an annual percentage rate of 8.629%)." *Id.* at 5-6. It is not the court's job, however, to hunt through a party's exhibits to determine whether these documents provide consistent loan terms, and in any event such documents do not establish the actual loan terms that were applied to Plaintiff.

The court therefore DENIES Moving Defendants' Motion for Summary Judgment on Plaintiff's TILA claim for rescission.

## B. Common Law Fraud

While not entirely clear, the FAC appears to state a claim for fraud against all Defendants based on the consummation of the mortgage loan.

Specifically, paragraph 18 of the FAC alleges:

> Beazie seeks a declaratory judgment that said 2007 Note and said 2007 Mortgage and as may have been assigned are void and unenforceable as procured by deceit and misrepresentation, with entitlement to actual damages, including attorneys' fees and costs and including against Does once identified, as found to be appropriate upon the trial of this case.

Moving Defendants argue that this claim fails as to them because the FAC does not assert that they committed any wrongful acts. Plaintiff does not dispute this fact, and instead argues that "[h]e seeks instead a judgment declaring the Amerifund loan transaction fraudulent and unenforceable, and hence unenforceable by [DBNTC]." Doc. No. 38, Pl.'s Summ. J. Opp'n ¶ 49. In other words, Plaintiff is not seeking damages against Moving Defendants and instead only seeks that the court declare that Moving Defendants cannot enforce the mortgage loan transaction and that the parties should be returned to their positions before the loan. Plaintiff's argument is not supported in law.

To establish that the loan transaction is void as to Moving Defendants -- who were not a party to the loan transaction -- Plaintiff must establish that the transaction is void, and not merely voidable. This distinction is necessary because a void note is invalid even as to a bona fide purchaser, whereas a voidable document cannot be set aside as to a bona fide purchaser. *Adair v. Hustace*,

64 Haw. 314, 320 n.4, 640 P.2d 294, 299 n.4 (1982); *see also In re Hokulani Square, Inc.*, 413 B.R. 706, 714 (Bkrtcy. D. Haw. 2009).

To establish that the mortgage transaction is void for fraud -- and can be cancelled against a bona fide purchaser such as DBNTC[9] -- Plaintiff must establish fraud in the factum, as opposed to fraud in the inducement. *See Aames Funding Corp. v. Mores*, 107 Haw. 95, 103-104, 110 P.3d 1042, 1050-51 (Haw. 2005) (explaining the three types of fraud in the mortgage context, including fraud in the factum, fraud in the inducement, and constructive fraud); *Adair*, 64 Haw. at 320 n.4, 640 P.2d at 299 n.4; *Standard Fin. Co. v. Ellis*, 3 Haw. App. 614, 619, 657 P.2d 1056, 1060 (1983). "Fraud in the factum is fraud which goes to the nature of the document itself." *Aames Funding Corp.*, 107 Haw. at 103, 110 P.3d at 1050 (quotations omitted); *Gonsalves v. Ikei*, 47 Haw. 145, 147, 384 P.2d 300, 303 (1963). A "common illustration" of this type of fraud "is that of the 'maker who is tricked into signing a note in the belief that it is merely a receipt or some other document.'" *Standard Fin. Co.*, 3 Haw. App. at 619, 657 P.2d at 1060 (quoting U.C.C. § 3-305, comment 7); *see also* Black's Law Dictionary 732, fraud in the factum (9th ed. 2009) ("Compared to fraud in the inducement, fraud in the factum

---

[9] Although Plaintiff asserts that the mortgage assignment to DBNTC is fraudulent, *see* Doc. No. 37-1, Pl.'s Decl. ¶ 13, Plaintiff offers no evidence to support that Moving Defendants engaged in any fraud whatsoever that would call into question DBNTC's status as a bona fide purchaser.

occurs only rarely, as when a blind person signs a mortgage when misleadingly told that it is just a letter."). In comparison, "[f]raud in the inducement is fraud which induces the transaction by misrepresentation of motivating factors." *Aames Funding Corp.*, 107 Haw. at 103-04, 110 P.3d at 1050-51 (quotations omitted).

The FAC asserts fraud in the inducement -- that Amerifund's alleged fraud prevented Plaintiff from understanding the details of the mortgage transaction. *See* Doc. No. 1-1, FAC ¶¶ 11-13. In contrast, the FAC does not assert fraud in the factum -- Plaintiff knew he was entering into a mortgage loan transaction on the subject property. Further, in response to Moving Defendants' argument that they did not engage in any wrongful conduct, Plaintiff came forward with evidence suggesting at most fraud in the inducement and not fraud in the factum. Accordingly, even if Amerifund induced Plaintiff into entering into a mortgage transaction that he otherwise would not have entered into, the transaction is only voidable such that Plaintiff cannot seek rescission and/or cancellation of this transaction against Moving Defendants, who were not a party to the fraudulent transaction.

The court therefore GRANTS Moving Defendants' Motion for Summary Judgment on Plaintiff's claim for common law fraud.

///

///

**C.     HRS § 480-2**

Plaintiff asserts a claim for violation of HRS § 480-2 against all Defendants based on Amerifund's alleged unfair or deceptive acts or practices in consummating the mortgage loan. *See* Doc. No. 1-1, FAC ¶ 20. Although Plaintiff recognizes that Moving Defendants committed no unfair or deceptive practices relating to the consummation of the loan, § 480-12 provides that "[a]ny contract or agreement in violation of this chapter is void and is not enforceable at law or in equity." Plaintiff therefore seeks to have the court declare the mortgage and note "void and unenforceable," entitling him to rescission against Moving Defendants and any and all subsequent assignees. *Id.* ¶ 19.[10]

Moving Defendants argue that this claim fails for a variety of reasons, and the court addresses these arguments in turn.

**1.     *Inability to Return the Parties to their Original Positions***

Moving Defendants argue that even if there were any § 480-2 violations, Plaintiff is still not entitled to the relief he seeks where he cannot tender the loan proceeds. Similar to the TILA rescission claim, the court agrees with

---

[10] Although the FAC also seeks damages "against Amerifund and its successors and assigns," Doc. No. 1-1, FAC ¶ 19, Plaintiff offers no basis for why damages based on Amerifund's alleged violations of HRS § 480-2 would be appropriate against Moving Defendants -- there is no evidence that Moving Defendants engaged in any misconduct in consummating the loan transaction and Plaintiff does not suggest any basis for why Moving Defendants should be held liable in damages for Amerifund's violations of HRS § 480-2. The court therefore addresses the §480-2 claim as seeking declaratory relief against Moving Defendants.

Moving Defendants' legal proposition, but finds that genuine issues of material fact still exist regarding ability to tender.

As to the legal proposition, Hawaii courts have not addressed the particular issue of what remedies a borrower is entitled to based on HRS § 480-12's mandate that contracts in violation of Chapter 480 are void and unenforceable. It is clear enough from the plain language of § 480-12 that if a plaintiff seeks to enforce a contract that violates Chapter 480, a defendant may raise § 480-12 as a defense to the action. *See, e.g.*, *808 Dev., LLC v. Murakami*, 111 Haw. 349, 357, 141 P.3d 996, 1004 (2006) (holding that the plaintiff was not entitled to a mechanic's lien on defendant's property where the contract under which the work was performed was void pursuant to § 480-12, but that the plaintiff could seek relief for quantum meruit); *Hiraga v. Baldonado*, 96 Haw. 365, 372-73, 31 P.3d 222, 229-30 (Haw. App. 2001) (similar). What is not so clear -- and what Hawaii courts have not addressed -- is what remedies are available to a plaintiff who seeks to affirmatively void a contract in violation of Chapter 480.

As a starting point, in determining appropriate equitable relief for violations of Chapter 480, the Hawaii Supreme Court has relied on the common law fraud principle that an injured person should be put "in the position he would have been had he not been defrauded." *Leibert v. Fin. Factors, Ltd.*, 71 Haw. 285, 290, 788 P.2d 833, 837 (1990) (quoting *Ellis v. Crockett*, 51 Haw. 45, 52, 451 P.2d

814, 820 (1969); *see also Davis v. Wholesale Motors, Inc*., 86 Haw. 405, 421, 949

P.2d 1026, 1042 (Haw. App. 1997) ("Correspondingly, while a plaintiff should be

compensated for loss suffered, he or she should not be permitted to reap a benefit

received from the defendant under the contract."); *see also Hiraga*, 96 Haw. at

370, 31 P.3d at 227.

To illustrate this point, *Davis*, 86 Haw. at 421, 949 P.2d at 1042,

relied upon *Majcher v. Laurel Motors*, 680 N.E.2d 416, 422 (Ill. App. 1997),

which found that a plaintiff who was entitled to rescission under the Illinois

Consumer Fraud and Deceptive Business Practices Act should return "any

consideration or property received" and "account for any benefits it received from

the other party under the contract."  Agreeing with *Majcher*, *Davis* reasoned that

accounting for the benefits a plaintiff receives makes common sense because "a

plaintiff cannot be unjustly enriched at a defendant's expense simply because the

defendant is liable for unfair or deceptive trade practices."  *Id*.

Turning to this action, merely voiding the transaction on its own is not

an appropriate remedy because Plaintiff would receive a windfall of holding title to

the subject property free and clear of any mortgage, as well as taking benefit of the

$1.26 million that was originally loaned by Amerifund.  In comparison, DBNTC

would have neither an enforceable note nor mortgage.  This windfall for Plaintiff,

at DBNTC's expense, runs wholly counter to the Hawaii courts' acknowledgment that a plaintiff cannot "be unjustly enriched at a defendant's expense simply because the defendant is liable for unfair or deceptive trade practices." *Davis*, 86 Haw. at 421, 949 P.2d at 1042.

That merely voiding the transaction (and not requiring Plaintiff to establish ability to put DBNTC in the position it held prior to the transaction) is improper is confirmed by other authorities. For example, 17A Am. Jur. 2d Contracts § 301, explains that a party seeking to void a contract must first return the benefits received:

> A party to an illegal agreement will not be permitted to avail himself or herself of its illegality until he or she restores to the other party all that has been received from such a party on the illegal agreement.

Indeed, avoidance of a contract and restitution and/or rescission, *i.e*., treating the agreements as void *ab initio* and placing the parties in the positions they held prior to the transaction, go hand-in-hand to carry out this result and prevent a windfall to one party. *See Lee v. HSBC Bank USA*, 121 Haw. 287, 292, 218 P.3d 775, 780 (2009) (holding that where an agreement created at a foreclosure sale is void and unenforceable for failure to comply with HRS § 667-5, then "[t]he high bidder at such a sale is entitled only to return of his or her downpayment plus accrued interest"); *Bischoff v. Cook,* 118 Haw. 154, 162, 185 P.3d 902, 910 (Haw. App.

2008) ("Where a contract has been avoided, the plaintiff is asking only that the contract be declared null and void and that restitution be awarded."); *Hiraga*, 96 Haw. at 372, 31 P.3d at 229 (holding that even though plaintiff-general contractor could not enforce contract that was void pursuant to HRS § 480-12, he could still recover in quantum meruit for work performed according to the contract); *see also Pan-American Petroleum & Transp. Co. v. United States*, 273 U.S. 456, 505 (1927) (collecting cases discussing void contracts and holding that rescission requires that the "the party against whom relief is sought shall be remitted to the position he occupied before the transaction complained of"); *Estate of Luster v. Allstate Ins. Co.*, 598 F.3d 903, 907-08 (9th Cir. 2010) (providing that under Indiana law, a "contract is voidable at the election of the injured party. If he elects to affirm the transaction, he has his remedy by way of damages. If he elects to rescind, he must return back what he has received, and in turn he is entitled to receive what he has parted with"); *Williams v. Homestake Mortg. Co.*, 968 F.2d 1137 (11th Cir. 1992) ("Under common law rescission, the rescinding party must first tender the property that he has received under the agreement before the contract may be considered void. Once the rescinding party has performed his obligations, the contract becomes void and the rescinding party may then bring an action in replevin or assumpsit to insure that the non-rescinding party will restore

him to the position that he was in prior to entering into the agreement, *i.e.*, return earnest money or monthly payments and void all security interests." (citations omitted)); *Cestro v. LNV Corp.*, 2010 WL 4642488, at *3 (D. Ariz. Nov. 9, 2010) ("[E]ven if the Court were to find that the loan was void due to Ms. Cestro's incapacity, the equitable remedy of rescission would require Ms. Cestro to tender the loan proceeds to Defendant LNV Corporation.").

Thus, the court finds that to void the mortgage transaction as Plaintiff seeks pursuant to HRS § 480-12, Plaintiff must establish that he place the parties in as close a position as they held prior to the transaction.[11]

In opposition, Plaintiff asserts that the court should follow *Beneficial Haw., Inc. v. Kida*, 96 Haw. 289, 30 P.3d 895 (2001). *Beneficial Hawaii* did not address HRS § 480-12, but rather HRS § 454-8, which provides that "any contract entered into by any person with any unlicensed mortgage broker or solicitor shall be void and unenforceable." *Beneficial Hawaii* found that the mortgage at issue was void for violation of Chapter 454, and that the current mortgagee (who was transferred the mortgage and note subsequent to the contract) was not entitled to restitution because it failed to present any evidence of what it had paid for

_____

[11] At this time, the court need not determine precisely how a plaintiff can establish how to place the parties back to their original positions for purposes of a § 480-2 claim.

mortgage and note.  *Id.* at 315-16, 30 P.3d at 921-22.  Given that *Beneficial*

*Hawaii* addressed HRS Chapter 454 and not Chapter 480, it is unclear whether it is

at all relevant to this analysis.  Regardless, *Beneficial Hawaii's* holding was limited

to a conclusion that Beneficial was not entitled to seek equitable relief based on a

failure of proof, not as a matter of law.  In fact, the court did not appear to question

the general proposition that a lender does have equitable rights to recover advanced

funds to avoid unjust enrichment.  *Beneficial Hawaii* provides Plaintiff no relief.

 In further opposition, Plaintiff invokes a general public policy

argument in favor of consumers and to "punish predatory offenders with a

complete loss of any remuneration or consideration whatsoever."  Doc. No. 50,

Pl.'s Recons. Reply at 9.[12]  The general public policy in favor of consumers,

however, does not suggest that violations of HRS Ch. 480 should result in the type

of windfall that would be created by the court simply voiding all contracts without

addressing the consideration exchanged between the parties.  Rather, as explained

above, Hawaii caselaw specifically addressing remedies under Chapter 480

supports that parties must be returned to the positions they previously held.

---

[12]  Plaintiff also argues that *Butler v. Obayashi*, 71 Haw. 175, 785 P.2d 1324 (1990), and
*Jones v. Phillipson*, 92 Haw. 117, 987 P.2d 1015 (Haw. App. 1999), support that a consumer
need not return consideration on a void contract, but these cases are unhelpful as they address a
specific statute, HRS § 444-22, which specifically prevents unlicensed contractors from
recovering for work performed.  In other words, § 444-22 explicitly rejects that the parties
should be placed back in their original positions.

As to the facts of this case, despite the court's finding that Plaintiff must establish an ability to tender and/or place the parties back to their original positions, the court finds that a genuine issue of material fact exists regarding this issue. As explained above for Plaintiff's claim for TILA rescission, Moving Defendants did not establish that Plaintiff cannot tender the loan proceeds, and the parties have not addressed the original position DBNTC held given that it is a subsequent holder of the note. Accordingly, Moving Defendants are not entitled to summary judgment.

### 2.    *Moving Defendants' Additional Arguments*

Moving Defendants raised three additional arguments why this claim fails, none of which carries their summary judgment burden.

First, Moving Defendants rely on *Kajitani v. Downey Sav. & Loan Ass'n*, 647 F. Supp. 2d 1208 (D. Haw. 2008), to argue that TILA preempts Plaintiff's HRS Ch. 480 claim because they are both based on Amerifund's actions and representations in originating the loan. Doc. No. 33-1, Defs.' Summ. J. Mot. at 18. The court agrees with the reasoning of *Kajitani*, which held that where "state law claims rest on TILA violations or concern subject matters explicitly preempted in [the regulations], those claims are clearly preempted." *Kajitani*, 647 F. Supp. 2d at 1220. But Plaintiff's Ch. 480 claim is not based solely on TILA violations --

rather, the FAC also asserts that (1) Plaintiff was not "allowed adequate time to read and to understand the terms and the language" of the mortgage, Doc. No. 1-1, FAC ¶ 11; (2) Amerifund intentionally falsified Plaintiff's monthly income, presumably so that Plaintiff would qualify for a loan that he could not afford, *id.* ¶ 12; and (3) Amerifund improperly conducted business in Hawaii without a license.[13] Thus, federal preemption principles do not apply.

Second, Moving Defendants argue that Plaintiff cannot assert a § 480-2 claim against them because Ch. 480 "does not contemplate vicarious liability for assignees." Doc. No. 33-1, Defs.' Summ. J. Mot. at 19. Although it is true that the FAC does not allege that Moving Defendants engaged in any conduct that violates § 480-2, as explained above, § 480-12 declares that contracts in violation of Ch. 480 are void such that a consumer may seek rescission against a subsequent assignee.[14]

Third, Moving Defendants argue that the undisputed facts establish

---

[13] Moving Defendants did not address, and the court therefore need not determine, whether each of these allegations constitute violations of HRS § 480-2. Rather, the court merely recites these facts to establish that Plaintiff's § 480-2 claim does not appear to be limited to TILA violations.

[14] Moving Defendants cite to *Araki v. One West Bank FSB*, 2010 WL 5625969 (D. Haw. Sept. 8, 2010), as supporting that a § 480-2 claim cannot stand against a subsequent assignee. In *Araki*, it was unclear whether the plaintiff was seeking damages or rescission against a subsequent assignee. To the extent *Araki* can be read as supporting that a HRS Ch. 480 claim for rescission cannot stand against a subsequent assignee, the court takes this opportunity to reject it.

that no unfair or deceptive practices occurred during the origination of the loan because Plaintiff was an experienced mortgagor, signed the loan documents without reading them, and was not hurried in completing the loan process. *Id.* at 20. Viewing the evidence in a light most favorable to Plaintiff, however, the court finds that genuine issues of material fact exist regarding whether there was a § 480-2 violation. Specifically, although Plaintiff was not expressly told to hurry in completing the mortgage loan documents, Plaintiff was aware there was another appointment after him such that he had only a half hour to complete the documents. Doc. No. 34-3, Defs.' Ex. 2 at 57, 62. Plaintiff therefore did not read the documents and instead relied upon the advice of Amerifund's loan officer, Max Clark, to guide him through the documents. Doc. No. 37-1, Pl.'s Decl. ¶ 5. Given that Plaintiff had previously worked with Mr. Clark on four other loans, *see id.*, the court cannot say that a reasonable consumer in these circumstances would have necessarily read all the documents.

The court therefore DENIES Moving Defendants' Motion for Summary Judgment on Plaintiff's HRS § 480-2 claim.

## V. **CONCLUSION**

Based on the above, the court GRANTS in part and DENIES in part Moving Defendants' Motion for Summary Judgment. As a result of this Order,

Plaintiff's claims against Amerifund remain, as well as Plaintiff's claims against

Moving Defendants for rescission pursuant to TILA and HRS § 480-2.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 16, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Beazie v. Amerifund Fin., Inc.*, Civ. No. 09-00562 JMS/KSC, Amended Order Granting in Part and Denying in Part Defendants Mortgage Electronic Registration Systems, Inc. and Deutsche Bank National Trust Company as Trustee for American Mortgage-backed Pass-through Certificates, Series 2007-5's Motion for Summary Judgment